## TOMPKINS v. KNUT.

(Circuit Court, D. Kentucky. June 6, 1899.)

1. TRIAL—DIRECTION OF VERDICT ON PLAINTIFF'S TESTIMONY.

Where a plaintiff has testified in his own behalf, and fully stated the facts on which he relies to recover, the court may properly, on a motion based on such testimony, direct a verdict for defendant, where the facts testified to would not support a recovery by plaintiff.

2. ASSAULT AND BATTERY—JUSTIFICATION—DEFENSE OF ANOTHER.

Plaintiff in an action for assault and battery, by his own testimony, was in a house, engaged in a struggle with defendant's wife, when defendant, who had not been in the house during the controversy, entered. Plaintiff was armed with a repeating rifle, which he had threatened to use,

and was apparently attempting to use, while the woman was attempting to prevent him, and it had once been discharged during the struggle. Plaintiff also had a revolver. Neither defendant nor his wife were armed. On entering the room, defendant, with the assistance of others present, none of whom were armed, overpowered plaintiff, disarmed him, and bound him, afterwards surrendering him to an officer. Both parties were lawfully in the house, and it did not appear that defendant used any more force than was necessary to disarm plaintiff. *Held* that, regardless of the circumstances leading up to the trouble, defendant was justified in his action, and the facts as shown by plaintiff's own testimony did not warrant the submission of the case to the jury.

On Motion of Defendant for Direction of Verdict.

Geo. W. Jolly, Miller & Todd, and W. W. Clark, for plaintiff.
Powers & Atchison, for defendant.

EVANS, District Judge. In the case of Oscanyan v. Arms Co., 103 U. S. 261, the trial court, after hearing the opening statement by plaintiff's counsel to the jury as to what facts were expected to be proved to support the plaintiff's case, and after verifying the accuracy of the statement, sustained a motion on behalf of defendant on that presentation of the case alone to instruct the jury to find a verdict against the plaintiff upon the ground that, if those statements were true, the contract sued upon was against public policy, and void. Upon a writ of error to the supreme court the proceeding was approved, and the judgment was affirmed. The plaintiff in this action for assault and battery and trespass has testified under oath, and stated the facts upon which he relies in support of his action, and the court is called upon to determine whether, assuming all the plaintiff says to be true, he is entitled to a verdict against the only defendant now remaining in the case, since the death of his wife, the former co-defendant, has abated the action as to her. As the plaintiff was a participant in the entire transaction out of which his action arose, and completely states his case, it is admissible and proper, I think, to bring this question up now, because it would not be competent for him by other witnesses to contradict what he says; and while, on this motion, his statements must be accepted as true in his behalf, they may also, for the reason indicated, be taken as true against him. It appears from his testimony that, having been employed by the defendant and his wife and her brother, the owners of the farms described in the pleadings, up to January 1, 1898, as a manager and overseer, his contract was soon afterwards renewed for the year 1898; that part of the agreement was that the plaintiff, besides his monthly wages, was to have the use of the house on the premises for occupation by himself and family, and also provisions for the support of them all; that on the 24th of January, 1898 (the defendant and wife having come to the farm on invitation of the plaintiff in the preceding December, and having remained there, and all parties having been entirely friendly, up to January 24th), there was some dispute as to whether plaintiff was any longer wanted, or would be permitted to remain, as the employé of defendant and his wife; that on the succeeding day (January 25th), while the defendant was

outside the house to the plaintiff's knowledge, who was also outside, the plaintiff was hastily informed that Mrs. Knut, or some one in the inside of the house, was removing the furniture, and putting his family out, whereupon the plaintiff hurriedly ran into the house, seized a Winchester repeating rifle, and, upon going into the room where the others were, among other things, said, "If they touch any more of my furniture I will kill every son of bitch who does it;" that the rifle was then cocked, and leveled, in the hands of the plaintiff, who also had upon him a revolver, and probably a dirk; that Mrs. Knut, while appealing to him to desist, took hold of the rifle, and while she had hold of it it was discharged; that the defendant also went into the room soon after plaintiff did, and there found his wife struggling with plaintiff, who was armed as indicated, and endeavoring in some way to control the direction of the pointing of the gun; that under these circumstances the defendant, with some persons present (none of whom except the plaintiff appear in any way to have been armed), overpowered plaintiff, bound his hands behind him, took from him his gun and pistol, removed him to the stable lot, and soon afterwards delivered him to a peace officer (a deputy sheriff) who happened to be at the house on other business, and that the plaintiff was then unbound and removed by the officer, accompanied by the defendant and one other person, to Owensboro, the county seat. It is claimed that a kodak picture was taken of some part of the scene, but it does not appear that defendant was concerned with that phase of the case, but that, if it was done by anybody, it was by his wife, now dead. It seems to the court that all parties were lawfully on the premises at the time, and that the whole case must turn, not upon the provisions of the contract, nor anybody's rights thereunder, but upon the facts immediately connected with the affray on January 25th. If this be correct, then the court, upon the plaintiff's own showing, is clearly of opinion that the defendant had reasonable grounds for believing, when he appeared upon the scene, that his wife was apparently in great jeopardy and danger of her life in her struggle with a man so thoroughly armed as was the plaintiff; that if the defendant had then been armed, and had taken the plaintiff's life, the law would have excused him; that if he might, in the then apparently necessary defense of his wife, have taken plaintiff's life, he was certainly excusable in doing for her protection, and probably his own, the lesser things of binding and disarming the plaintiff, so as to prevent further mischief until he could deliver plaintiff to a peace officer, precisely as he might be justified in binding a madman or a dangerous beast, who had as ample power to do mischief as this heavily-armed man had upon this occasion; and that it does not appear that defendant used more force than was apparently necessary to prevent great bodily harm to his wife, and probably others. Whether plaintiff had any right to enforce his claims to the possession of defendant's premises by force of arms may well admit of doubt, as he was only defendant's employé, and not his tenant in the ordinary sense; and, if plaintiff had not such right, then he was a gross violator of the law in seeking to remedy

his supposed wrongs in so violent a manner, and should take the consequences without complaint. Indeed, all things considered, the court is inclined to think that the plaintiff got off quite as well as he could have reasonably expected. Upon the facts stated under oath by the plaintiff, if the jury were to find a verdict in his favor the court would not permit it to stand. For the reasons thus briefly stated, the court will sustain the motion, and instruct the jury to find for the defendant.